# MARC
### ATTORNEYS AT LAW
**A PROFESSIONAL CORPORATION**

MCCUSKER · ANSELMI
ROSEN · CARVELLI

210 Park Avenue, Suite 301
Florham Park, New Jersey 07932
Tel: 973.635.6300 · Fax: 973.635.6363
www.marc.law

BRUCE S. ROSEN
*Director*
Direct: 973.457.0123
Fax: 973.457.0276
brosen@marc.law

May 9, 2017

**VIA ECF**
The Honorable Leda Dunn Wette, U.S.M.J.
Martin Luther King Building and Courthouse
50 Walnut Street
Room 4015
Newark, New Jersey 07101

        **Re:**    *Golden, et al. v. New Jersey Institute of Technology, et al. v. Federal Bureau of Investigation (Case No. 15-CV-08559)*

Dear Judge Wette:

    Pursuant to the Court's April 18, 2017 Order, ECF No. 36, Plaintiffs Daniel Golden and Tracy Locke (collectively, "Plaintiffs") respectfully submit this pre-motion leave letter setting forth the grounds for Plaintiffs' proposed motion for an award of attorney's fees in the above-referenced matter, and addressing related issues concerning the Court's jurisdiction to hear such a motion. Specifically, this letter addresses Plaintiffs' entitlement to a mandatory award of reasonable attorney's fees under the New Jersey Open Public Records Act, N.J.S.A. 47:1A-1, *et seq.* ("OPRA" or the "Act") and the affect—if any—of the stated intention of Defendants/Third-Party Plaintiffs/Third-Party Defendants the New Jersey Institute of Technology and its Custodian of Records, Clara Williams (collectively, "NJIT") to dismiss their pending claim against Third-Party Defendant/Third-Party Plaintiff the Federal Bureau of Investigation ("FBI").

    As set forth in more detail below, because Plaintiffs' lawsuit was successful—resulting in the release of thousands of pages of records previously withheld in full or in part by NJIT—they are entitled to fees as the "prevailing party" under OPRA. Furthermore, because NJIT is the custodian of the records requested by Plaintiffs under the Act, New Jersey law makes clear that NJIT is responsible for paying the attorney's fee award due Plaintiffs. In this case, NJIT may have colorable claim that the Court may order that the FBI pay some or all of that fee award. There is no jurisdictional bar to such an award.

    With respect to the pending claims brought by NJIT and the FBI against one another in this matter, neither may now voluntarily dismiss those claims without leave of Court given the parties'

agreements to stay proceedings in this case, and any such request for leave should be denied. In the event those claims are dismissed, and the FBI is no longer a party to this lawsuit, this Court can and should retain jurisdiction over this matter to adjudicate Plaintiffs' motion for an attorney's fee award in light of its familiarity with the case and the extensive time already invested by the parties in resolving this matter, and to avoid unfairness to the parties. Remanding this matter back to state court would only delay these proceedings further and would not serve the interests of judicial economy or convenience.

For all the reasons set forth herein, Plaintiffs respectfully request that the Court enter an order setting a briefing schedule on Plaintiffs' motion for an award of reasonable attorney's fees under OPRA.

## I. Relevant Factual and Procedural Background

This case concerns three public records requests submitted to NJIT by Plaintiffs under OPRA between April 8 and August 13, 2015 for access to emails between certain persons at NJIT and the FBI or CIA (collectively, the "OPRA Requests"). *See* Verified Complaint, ECF No. 1-1 ("Golden Compl."). The OPRA Requests were made by Plaintiffs for newsgathering purposes in connection with Mr. Golden's forthcoming non-fiction book *Spy Schools*, about foreign and domestic intelligence activities at U.S. universities, which will be published by Henry Holt and Company in fall 2017. https://www.propublica.org/site/author/daniel_golden.  Mr. Golden is a Pulitzer Prize winning journalist and currently a Senior Editor at ProPublica. *Id.*

In response to Mr. Golden's first OPRA request (the "First Request"), NJIT produced approximately 540 pages of responsive records—the vast majority of which were either fully or heavily redacted—and withheld approximately 3,949 pages of other responsive records in their entirety, citing OPRA Executive Order No. 21, N.J.S.A. 47:1A-1.1, and N.J.S.A. 47:1A-9. Golden Compl. at 5 & Ex. B; *see also* NJIT Verified Ans. to Pls.' Verified Comp., Affirmative Defenses, Countercl., Third-Party Compl, Designation of Trial Counsel and Certification Pursuant to R. 4:5-1 & R. 4:6-1(D) ("NJIT Ans."), ECF No. 2, at 3. According to NJIT, after it received the First Request, it "invited the FBI to review its contemplated production of documents" and, over the course of two days in May of 2015, "approximately eight FBI personnel reviewed NJIT's contemplated production of documents." Letter from Gary Potters to Judge Wettre (Dec. 17, 2015), ECF No. 5, at 1. According to NJIT, "[b]ased on this review, the FBI (1) made a number of redactions to several documents and (2) directed NJIT to withhold from production approximately 4,000 pages of documents." *Id.*

In response to Ms. Locke's OPRA request (the "Second Request"), NJIT refused to provide copies of any responsive records. Golden Compl. at 6–7; NJIT Ans. at 4–5. In response to Plaintiffs' final OPRA request (the "Third Request"), which, *inter alia*, expanded the date range for emails initially requested by Mr. Golden, NJIT also refused to provide any responsive records. Golden Compl. at 7–8; NJIT Ans. at 5.

Following NJIT's full denial of the Third Request, on September 11, 2015, Plaintiffs filed this action in the Superior Court of New Jersey Law Division, Essex County, against NJIT pursuant to OPRA and common law. Golden Compl. On September 17, 2015, the Superior Court issued an order to show cause to NJIT. *See* ECF No. 1-2.

The Honorable Leda Dunn Wette, U.S.M.J.  May 9, 2017
Page 3

Plaintiffs were informed by NJIT's counsel that, following the filing of this lawsuit by Plaintiffs, in or about October of 2015, NJIT provided copies of all records responsive to Plaintiffs' OPRA Requests to the FBI. *See* March 30, 2016 Letter from Gary Potters to Plaintiffs' Counsel, attached hereto as Exhibit A (without attachment). And, according to NJIT, following the commencement of Plaintiffs' lawsuit "the FBI advised [NJIT] it was going to intervene in the State Court proceeding as a means to stand behind its redactions and direction to withhold from production in response to the OPRA request the approximately 4,000 pages of documents." Letter from Gary Potters to Judge Wettre (Dec. 17, 2015), ECF No. 5, at 2. The FBI, however, did not intervene.[1]

On November 13, 2015, NJIT filed its answer to Plaintiffs' complaint, a counterclaim against Plaintiffs,[2] and a third-party complaint against the FBI seeking indemnification in the event that an award of attorney's fees was entered against NJIT based on Plaintiffs' OPRA and common law claims (the "NJIT Third-Party Complaint"). *See* NJIT Ans., at 13–17.

On December 11, 2015, the FBI removed this matter to this Court pursuant to 28 U.S.C. § 1442(a)(1) on the basis of NJIT's Third-Party Complaint against it. *See* Notice of Removal, ECF No. 1.[3]

On February 18, 2016, the FBI filed a counterclaim against NJIT seeking declaratory and injunctive relief to prevent NJIT from releasing responsive records to Plaintiffs in response to their OPRA Requests. *See* ECF No. 23 (the "FBI Counterclaim").

In subsequent meet and confer proceedings, counsel for the FBI informed Plaintiffs that it was in possession of approximately 6,000 pages of documents identified by NJIT as responsive to Plaintiffs' OPRA Requests. Joint Status Report, ECF No. 24, at 1–2. The FBI's position at that time was that "approximately 4,000 [of those] pages are federal records, controlled by the FBI, and not subject to disclosure under [OPRA], regardless of whether or not they are subject to any exemption(s)." *Id.* at 2 (quotation removed, second alteration in original). The FBI proposed "to treat the remaining 2,000 pages as a request to consult from NJIT[,]" which would entail reviewing them "at a rate of 500 pages per month[]" and "sendi[ng] the documents back to NJIT." *Id.* at 2. Given the "upcoming publication deadlines for Mr. Golden's forthcoming book," Plaintiffs agreed to the FBI's proposal, but made clear that they did "not concede and do not agree with, *inter alia*, the FBI's position that the remaining approximately 4,000 pages of documents responsive to Plaintiffs' request

---

[1] Plaintiffs agreed to a delay of proceedings in the state court, at the request of NJIT, to give the FBI an opportunity to intervene. *See* Letter from Gary Potters to Judge Mitterhoff (October 8, 2015), ECF No. 1-3; Letter from Gary Potters to Judge Wettre (December 17, 2015), ECF No. 5 ("Initially, the FBI advised it was going to intervene in the State Court proceeding . . . . [t]oward that end, the FBI requested me to obtain an extension of time, which I did and to which plaintiffs' counsel consented.").

[2] NJIT's counterclaim against Plaintiffs for $26.65 was dismissed by stipulation on December 3, 2015. ECF No. 1-4.

[3] 28 U.S.C. § 1442(a)(1) provides that a "civil action . . . that is commenced in a State court and that is against or directed to" the "United States or any agency thereof . . . for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of revenue" may "be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending . . . ."

are not subject to OPRA, and reserve all rights." *Id.* at 2–3. NJIT "also agree[d] to the FBI's proposal." *Id.* at 3. The parties jointly proposed "a stay of all deadlines, as determined by the Federal Rules of Civil Procedure and the Court's Local Rules, for the filing of any and all responsive pleadings or motions in connection with the FBI's Counterclaim, and for other pleadings or motions that may be filed in this matter, until June 15, 2016." *Id.* The parties also agreed that "Plaintiffs and NJIT retain the right to respond to the FBI's Counterclaim . . . after expiration of the stay." *Id.* The Court entered a stay with respect to the filing of all responsive pleadings and/or motions in connection with both the FBI Counterclaim and the NJIT Third-Party Complaint on March 7, 2016. Order, ECF No. 26, at 1–2.

Between February, 2016 and the end of June, 2016, NJIT sent four productions of records to Plaintiffs, releasing approximately 1,499 pages in full and 379 pages in part that were responsive to Plaintiffs' OPRA Requests. *See* Joint Status Report, ECF No. 27, at 1–2. Two-hundred and ninety-six pages of records were withheld in full. *Id.* Each production from NJIT to Plaintiffs included a cover letter from NJIT's counsel, as well as a copy of a letter from the FBI to Ms. Williams, NJIT's Custodian of Records. True and correct copies of those letters as received by Plaintiffs are attached hereto, collectively, as Exhibit B. The letters from the FBI to Ms. Williams state that they are accompanying CDs of records being provided "in response to your request for the FBI's review of records responsive to the [above-referenced case]." *See* Ex. B.

After meeting and conferring in June of 2016, the FBI informed Plaintiffs and NJIT that, upon further examination, it would also review documents responsive to Plaintiffs' OPRA Requests that the FBI had originally asserted were not subject to disclosure under OPRA at a rate of at least 500 pages per month. *See* Joint Status Report, ECF No. 27, at 2–3. Plaintiffs and the NJIT agreed to that proposal, and the parties jointly proposed that the "current stay remain in place until the FBI completes its review of these documents and any responsive, non-exempt ones are subsequently produced to Plaintiffs through NJIT." *Id.* at 4. The Court subsequently entered an order continuing the stay. Order, ECF No. 28.

Between August, 2016 and November, 2016, NJIT made four additional productions of responsive records to Plaintiffs, each of which, as before, included a cover letter as well as a copy of a letter from the FBI to Ms. Williams. True and correct copies of those letters as receoved by Plaintiffs are attached hereto, collectively, as Exhibit C. The FBI's letters to Ms. Williams, once again, stated that they accompanied attached CDs of records being provided "in response to your request for the FBI's review of records responsive to the [above-referenced case]." *See* Ex. C.

In total, over the course of the eight productions described above, Plaintiffs received approximately 3,445 unredacted pages of records responsive to their OPRA Requests, as well as 379 partially redacted pages, from NJIT. *See* Joint Status Report, ECF No. 29, at 2. Other records were withheld from Plaintiffs in full. *Id.*

Following the November, 2016 production, the parties met and conferred, and "the FBI and NJIT [] agreed to provide Plaintiffs with additional information regarding the documents being withheld in full, as well as a limited number of documents being withheld in part." *Id.* The FBI provided that information on December 9, 2016 and, based on that information, Plaintiffs agreed not to challenge the majority of the withholdings. *See* Joint Status Report, ECF No. 32, at 2. Plaintiffs,

did however, "provid[e] NJIT and the FBI with a list of specific documents withheld in part and in full that they [] asked to be revisited." *Id.*

In response to that request, on February 17, 2017, the FBI provided Plaintiffs with additional records responsive to the OPRA Requests, along with additional information regarding the withholdings identified by Plaintiffs. Joint Status Report, ECF No. 34, at 3. Upon review of the records and information provided, and in light of the publication deadlines for Mr. Golden's book, Plaintiffs informed the parties that they would not seek judicial review of the remaining withholdings and redactions. *Id.* The parties discussed Plaintiffs' entitlement to an award of attorney's fees under OPRA, but were unable to reach an agreement on that issue. *See id.* at 3–5. NJIT has made clear it will not voluntarily provide any contribution towards an award of Plaintiffs' fees.

In the most recent JSR, filed on March 6, 2017, NJIT noted that the "FBI has requested, and NJIT has agreed, to voluntarily dismiss [the NJIT Third-Party Complaint] against the FBI without prejudice . . . ." *Id.* at 4. The FBI informed the parties during their meet and confer discussion, and informed the Court at the April 18, 2017 status hearing, that it believes the FBI Counterclaim against NJIT to be moot.

    II.   **Because Plaintiffs' OPRA lawsuit successfully secured the release of records, they are entitled to an award of reasonable attorney's fees.**

Under OPRA, a person denied access to a government record by the custodian of the record may bring an action challenging that decision, and a "requester who prevails in any [such] proceeding *shall* be entitled to a reasonable attorney's fee." N.J.S.A. 47:1A-6 (emphasis added). Thus, unlike some other state public records laws, OPRA "mandate[s], rather than permit[s], an award of attorney's fees to a prevailing party[.]" *Mason v. City of Hoboken*, 196 N.J. 51, 75 (2008). The "fee-shifting provisions in OPRA are a vital means of fulfilling" the state's commitment to open government. *Courier News v. Hunterdon Cty. Prosecutor's Office*, 378 N.J. Super. 539, 546 (App. Div. 2005).

In determining whether a party has prevailed for purposes of OPRA's mandatory attorney's fee provision absent an adjudication on the merits of a withholding, courts apply the "catalyst theory." *See Mason*, 196 N.J. at 76. Under that theory, a plaintiff/requestor need only show "(1) a factual causal nexus between plaintiff's litigation and the relief ultimately achieved; and (2) that the relief ultimately secured by plaintiffs had a basis in law." *Id.* at 76 (internal quotations and citation omitted). In other words, "a complainant is a 'prevailing party' if he or she achieves the desired result because the complaint brought about change (voluntary or otherwise) in the custodian's conduct." *Spectraserv, Inc. v. Middlesex Cty. Utilities Auth.*, 416 N.J. Super. 565, 583 (App. Div. 2010).

Here, Plaintiffs are clearly a "prevailing party." As a direct result of their lawsuit, they secured the release of almost 4,000 pages of government records they were previously denied in full or in part by NJIT. *See* Joint Status Report, ECF No. 29, at 2. There is, unquestionably, a "factual causal nexus" between this litigation and the release of those thousands of pages of records. *See Mason*, 196 N.J. at 76. Prior to the filing of Plaintiffs' lawsuit, NJIT responded to the First Request by releasing only a few hundred pages of records, the vast majority of which were partially or heavily redacted. Golden Compl. at 1–3 & Ex. B. It denied Plaintiffs' Second Request and Third Requests in their entirety. *Id.* at 6–8, & Exs. E, G. Absent Plaintiffs' filing of this lawsuit, Plaintiffs would not have obtained the records they now have. Thus, not only have Plaintiffs "achieve[d] the desired result because the complaint brought about change[,]" *Spectraserv*, 416 N.J. Super. at 583, but there is a

The Honorable Leda Dunn Wette, U.S.M.J.                                          May 9, 2017
Page 6

clear "factual causal nexus" between Plaintiffs' litigation and the result they achieved, *Mason*, 196 N.J. at 76.

       Second, release of the records "ultimately secured by [P]laintiffs had a basis in law." *Mason*, 196 N.J. at 76 (internal quotation and citation omitted). As noted above, custodians of government records in New Jersey are required to provide access to their records upon request, unless such records are specifically exempted. *See* N.J.S.A. 47:1A-5. The definition of "government record[s]" subject to OPRA is broad, and includes

> any . . . information stored or maintained electronically . . . or any copy thereof, that has been made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State or of any political subdivision thereof, including subordinate boards thereof, or that has been received in the course of his or its official business by any such officer, commission, agency, or authority of the State or of any political subdivision thereof, including subordinate boards thereof.

N.J.S.A. 47:1A-1.1. Emails "fall within the scope of this expansive provision." *McGee v. Twp. of E. Amwell*, 416 N.J. Super. 602, 614 (App. Div. 2010).

       Here, Plaintiffs properly requested a specific set of emails between certain government employees at NJIT and certain federal agencies. *See* Golden Compl. Because those emails were made, maintained, or received in the course of the official business of NJIT and/or its employees, they are subject to OPRA's mandate of disclosure. *See* N.J.S.A. 47:1A-1.1, 47:1A-5(a). Plaintiffs requested those records from Williams and NJIT, who are subject to OPRA, N.J.S.A. 47:1A-1.1. *See* Golden Compl. And, after the filing of this lawsuit, thousands of pages of records in NJIT's possession that were responsive to Plaintiffs' OPRA Requests that were previously withheld by NJIT in full or in part were released to Plaintiffs by NJIT following its "consult[ation]" with the FBI. *See* Joint Status Report, ECF No. 24, at 2. Accordingly, Plaintiffs' relief has a "basis in law[,]" and under the catalyst theory Plaintiffs are entitled to recover reasonable attorneys' fees from this action. *Mason*, 196 N.J. at 76.

       **III. Under New Jersey law, NJIT must pay reasonable attorney's fees to Plaintiffs; NJIT has a colorable claim that the Court may order some or all of those fees be paid by the FBI.**

       OPRA's fee-shifting provision does not explicitly state who must pay a prevailing parties' attorney's fees, *see* N.J.S.A. 47:1A-6. As explained below, however, the New Jersey Appellate Division has repeatedly concluded that the public agency that is the custodian of the requested records bears that responsibility. Accordingly, as the custodian of the records that were requested by and ultimately produced to Plaintiffs, NJIT must pay Plaintiffs' reasonable attorney's fees in connection with this litigation. NJIT has conceded as much. *See, e.g.*, Letter from Gary Potters to Judge Wettre (Dec. 17, 2015), ECF No. 5, at 2 (stating that "[u]nder OPRA, a public entity to whom the request is directed may be assessed a sanction in the form of attorneys' fees and costs" and that "NJIT and [Ms.] Williams confront such exposure as a result of their compliance with a lawful directive issued by a

The Honorable Leda Dunn Wette, U.S.M.J.  May 9, 2017
Page 7

Federal government agency").[4] Indeed, as far as Plaintiffs can discern, the purpose of the NJIT Third-Party Complaint against the FBI was to secure for NJIT a means of seeking reimbursement from the FBI for an award of such fees.

In this case, as discussed below, because the FBI brought a declaratory relief action seeking to block NJIT from releasing records responsive to Plaintiffs' OPRA Requests, NJIT may argue, and the Court may find, that the FBI is responsible for all or some portion of the attorney's fee award due Plaintiffs under OPRA.

### A. NJIT, as the custodian of records, must pay Plaintiffs reasonable attorney's fees.

As the Appellate Division explained in *Courier News v. Hunterdon County Prosecutor's Office*, 378 N.J. Super. 539 (App. Div. 2005), the provision of OPRA setting forth a requester's right to challenge a denial of access places special emphasis on the responsibility of the records custodian and the corresponding public agency to which a request is directed. *See* N.J.S.A. 47:1A-6 (stating, *inter alia*, that "[a] person who is denied access to a government record *by the custodian of the record*," may "institute a proceeding to challenge *the custodian's decision*[,]" and in such a proceeding, the "*public agency* shall have the burden of proving that the denial of access is authorized by law" (emphasis added)). Thus, even if there are multiple government entities involved in litigation arising out of a denial of access to records, or there is an agreement between two entities to keep records confidential, it is the public agency that is the custodian of the records sought that is required to pay the requester's attorney's fees under OPRA. *See Courier News*, 378 N.J. Super. 539; *Paff v. W. Deptford Twp.*, No. A-3195-08T2, 2010 WL 546587 (N.J. Super. Ct. App. Div., Feb. 18, 2010) ("*Paff*").

*Courier News* involved an OPRA request for a record from a local county prosecutor's office (the "County") related to a criminal prosecution. *See* 378 N.J. Super. at 541. After determining that the record was improperly withheld, the Appellate Division remanded the case to the trial court to address the issue of attorney's fees. On remand, the County joined the State, contending that the State was responsible for some or all of the attorney's fees due to the plaintiff/requestor under the theory that the County was performing a state law enforcement function when it denied access to the requested record. *See id.*

On appeal, the Appellate Division held that the County—not the State—was required to pay reasonable attorney's fees to the requestor because the County was the custodian of the requested

---

[4] In initially denying Plaintiffs access to records responsive to their OPRA Requests, NJIT cited a variety of exemptions under New Jersey law, including Executive Order No. 21 (McGreevey 2002), Executive Order No. 26 (McGreevey 2002), Executive Order No. 9 (Hughes 1963), N.J.S.A. 47:1A-9, and N.J.S.A. 47:1A-1.1 *See* Golden Compl. Exs. B, E, G. After this lawsuit was filed, however, NJIT abandoned any reliance on those exemptions, and made clear that it did not stand by any of the redactions or withholdings. *See* NJIT Ans.; Letter from Gary Potters to Judge Wettre (Dec. 17, 2015), ECF No. 5. After providing copies of the records it located that were responsive to Plaintiffs' OPRA Requests to the FBI, NJIT apparently relied entirely on the FBI to review those records and to determine what of NJIT's records should, in the FBI's view, be released to Plaintiffs. *See, e.g.*, Exs. B, C.

record. *See* 378 N.J. Super. at 546. Looking to the many provisions of OPRA, discussed above, that emphasize the responsibility of the records custodian, the Court held that because the County "was the custodian of the [record . . . it] assumed administrative responsibility to safeguard [the record] the minute it took custody of it." *Id.* Thus, regardless of what other responsibilities the County may have had, the duty to pay attorney's fees associated with denying access to that record—a duty flowing "exclusively from the provisions of OPRA"—was the County's. *Id.* In so holding, the Court explained how OPRA's clear, mandatory fee-shifting provision serves as a "vital means of fulfilling" the State's commitment to open government; without it, the Court stated,

> the ordinary citizen would be waging a quixotic battle against a public entity vested with almost inexhaustible resources. By making the *custodian of the government record* responsible for the payment of counsel fees to a prevailing requestor, the Legislature intended to even the fight.

*Id.* (emphasis added).

*Paff v. West Deptford Township* is likewise instructive. In that case, a requester sought records pursuant to OPRA that related to a federal lawsuit involving the Township that had resulted in a settlement. *See Paff*, 2010 WL 546587, at *1. The Township denied access to the records "because they were subject to a discovery confidentiality order entered in the federal lawsuit." *Id.* The requester filed suit and the trial court ordered the Township to disclose the records and pay the plaintiff/requester's attorney's fees and costs. *Id.*

On appeal, the Township argued that it should not have to pay the requester's attorney's fees because it had entered into a confidentiality agreement in the federal court litigation that prohibited it from releasing the records at issue. *See id.* The Appellate Division flatly rejected the notion that a public agency can circumvent the requirements of OPRA—including OPRA's mandatory fee provision—in such a manner:

> Manifestly, the Township could not exempt itself from the requirements of OPRA, or other State law, by entering into a consent order to maintain confidentiality of discovery materials it provides to litigants in a lawsuit. The confidentiality order did not nullify the Township's obligations under OPRA. If the Township had any doubts about its recourse, it should have obtained leave or clarification from the federal court to meet its statutory obligations under OPRA.

*Paff*, 2010 WL 546587, at *2. The Appellate Division affirmed the award of attorney's fees and costs. *Id.*

Similarly, here, it is undisputed that Plaintiffs submitted their OPRA Requests to NJIT and that NJIT is the custodian of the records that were requested by and released to Plaintiffs. *See* Golden Compl; Joint Status Report, ECF No. 24; Ex. A. Accordingly, under New Jersey law, NJIT is responsible for Plaintiffs' attorney's fees. *See* N.J.S.A. 47:1A-6; *Courier News*, 378 N.J. Super. at 546; *see also* Letter from Gary Potters to Judge Wettre (Dec. 17, 2015), ECF No. 5, at 2 (stating "[u]nder OPRA, a public entity *to whom the request is directed* may be assessed a sanction in the form of attorneys' fees and costs." (emphasis added)).

It is Plaintiffs understanding that NJIT intends to contest its liability for attorney's fees under N.J.S.A. 47:1A-6. *See, e.g.*, Joint Status Report, ECF No. 34, at 4 (stating that NJIT will "vigorously oppose" Plaintiffs' motion for attorney's fees); NJIT Ans. While Plaintiffs are unaware of any legal authority supporting such opposition, it understands NJIT's theory to be that because the "redactions and documents withheld from production [in response to Plaintiffs' OPRA Requests] were made by and at the direction of the FBI[,]" it is absolved of its duty to pay Plaintiffs' reasonable attorney's fees under OPRA. NJIT Ans. at 7. There is no support in either the text of the statute or caselaw for this position. To the contrary, both *Courier News* and *Paff* make clear that that NJIT *cannot* evade its statutory responsibilities as the custodian of requested records simply because it believed it was acting at the direction of another government entity or because it had made an agreement to not produce certain records. *See Courier News*, 378 N.J. Super. at 546; *Paff*, 2010 WL 546587, at *2. Under OPRA it is the custodian of a requested government record that is responsible for providing access to it, and it is the public agency's burden to show that any denial of access is authorized by law. N.J.S.A. 47:1A-5–6. NJIT may contend that it was acting at the behest of another government entity, but even assuming, *arguendo*, that is true it puts NJIT on no different footing than the County in *Courier News*, which was ordered to pay the requester's attorney's fees pursuant to OPRA. *See* 378 N.J. Super. at 546.

The theory that the provisions of OPRA somehow do not apply to NJIT in this case because, according to NJIT, it was being pulled in opposite directions by two entities with different interests is also undercut by the Appellate Division's decision in *Collingswood Board. of Education. v. McLoughlin*. *See* No. A-2475-14T1, 2016 WL 6134926 (N.J. Super. Ct. App. Div. Oct. 21, 2016) ("*McLoughlin*"). In that case, a New Jersey public agency brought an affirmative declaratory relief action after a third party threatened to sue if the agency released records requested under OPRA by two reporters. *See id.* The public agency filed its affirmative action against *both* the media requesters and the third party, asserting that "releasing the document may expose it 'to potential litigation and damages' from [the third party], and a 'failure to release the [report]' could expose it to the same risk from the media requestors." *McLoughlin*, 2016 WL 6134926, at *1. The Appellate Division rejected the idea that the agency could escape that obligation, explaining that

> OPRA requires the governmental body to make precisely that judgment call: either the report is a governmental record that must be released, or it belongs within an exception carved out by statute. The [public agency] must make that difficult judgment, relying on its legal counsel and prior court decisions as well as those of the Government Records Council.

*Id.* at *3.

Here, NJIT advances essentially the same argument as the public agency in *McLoughlin*: with Plaintiffs requesting release of the records, and the FBI requesting secrecy, NJIT faced a "Hobson's choice." Letter from Gary Potters to Judge Wettre (Dec. 17, 2015), ECF No. 5, at 2. But as the Appellate Division has made clear, making such a "choice" is exactly the type of "judgment call" that NJIT was required by law to make. *McLoughlin*, 2016 WL 6134926, at *3. In this case, NJIT chose secrecy; it withheld the vast majority of the records requested by Plaintiffs, forcing Plaintiffs to file

The Honorable Leda Dunn Wette, U.S.M.J.  May 9, 2017
Page 10

this lawsuit. *See* N.J.S.A. 47:1A-1.[5] It is now statutorily required to bear responsibility for that decision.

While it is Plaintiffs' position that New Jersey law entitles them to an award of reasonable attorney's fees from NJIT in connection with this case, N.J.S.A. 47:1A-6, Plaintiffs take no position on any subsequent action(s) by NJIT to recover some or all of that fee award from the FBI. Plaintiffs are not aware of the content of the agreement(s), if any, between NJIT and the FBI concerning the records at issue, and take no position on whether the NJIT Counterclaim against the FBI is proper and/or whether it must be adjudicated in this Court or must be brought, as the FBI has suggested, in the Court of Federal Claims. *See* Joint Status Report, ECF No. 34, at 4. As set forth below, however, Plaintiffs believe that NJIT has a colorable claim that this Court may require the FBI to pay some or all of the mandatory fee award due Plaintiffs under OPRA in the first instance.

    B. <u>NJIT may argue, and the Court may find, that some or all of the mandatory attorney's fee award due Plaintiffs under OPRA must be paid by the FBI.</u>

Although, for the reasons set forth above, NJIT is ultimately responsible for the mandatory attorney's fee award due to Plaintiffs under OPRA, *see* N.J.S.A. 47:1A-6, there are grounds for the Court to require that the FBI pay some or all of that award in light of the FBI's decision to file an affirmative declaratory relief action seeking to block disclosure in this case. *See* FBI Counterclaim, ECF No. 23. The right to bring a lawsuit concerning access to records under OPRA is "*solely that of the requestor.*" N.J.S.A. 47:1A-6 (emphasis added). The proper method for a third party to assert its interests with respect to the possible release of records by a state public agency is to "seek intervention under the New Jersey rules of court[,]" *Gill v. N.J. Dep't of Banking & Ins.*, 404 N.J. Super. 1, 9 (App. Div. 2008). Under New Jersey law, attorney's fees may be assessed against a public agency that brings an affirmative action to prevent disclosure of government records requested under the Act. *See In re New Jersey Firemen's Ass'n Obligation to Provide Relief Applications under Open Pub. Records Act*, 443 N.J. Super. 238 (App. Div. 2015) (certif. granted, 224 N.J. 528 (Apr. 29, 2016)) ("*New Jersey Firemen's Association*"); *McLoughlin*, 2016 WL 6134926.

In *New Jersey Firemen's Association*, after a local public agency denied access to government records under OPRA it took the extraordinary step of filing an affirmative action against the requester, seeking a declaration that the records need not be disclosed. *See* 443 N.J. Super. at 245–47. The case was brought under the New Jersey Declaratory Judgment Act, the state counterpart to the federal Declaratory Judgment Act. *Id.* at 253, 256. On appeal, the Appellate Division held that a public agency is *not* entitled to bring an affirmative action against a requester, as "OPRA expressly grants a right of action *exclusively* to requestors." *Id.* at 257 (emphasis added). Accordingly, "[a] party that lacks a statutory right of action under OPRA may not obtain declaratory relief regarding its rights or

---

[5] To be clear, secrecy was not—as NJIT suggests—either its only or best option. It could have followed the lead of the agency in *Spectraserv*. After a third party was given an opportunity to intervene and assert its own reasons why certain requested records should not be released under OPRA and declined to do so, the responding agency released the records it previously withheld. *See* 416 N.J. Super. 565. Here, after the FBI was given ample opportunity to intervene in this matter at the state court level and did not do so, NJIT not only refused to release the records requested by Plaintiffs, it filed the NJIT Third-Party Complaint forcing the FBI to become a party to this action, which resulted in the removal of this action to this Court. *See* NJIT Ans.

The Honorable Leda Dunn Wette, U.S.M.J. May 9, 2017
Page 11

obligations under OPRA." *Id.* The Court also held that the records at issue were required to be released, and therefore "because [the requester] has prevailed, in that he has secured access to [the records], he is entitled to a reasonable attorney's fee." *Id.* at 271.

The Appellate Division subsequently decided *McLoughlin*, where, as noted above, a state public agency brought a declaratory relief action against both the requester and a third party who wished for the records to remain secret. *See* 2016 WL 6134926 at *1–2. Although the requester was awarded some attorney's fees in that case in the trial court, after holding that the declaratory relief action was improper, the Appellate Division remanded the case to the trial court so it could "determine whether the fees should be adjusted to account for any work unnecessarily expended by the requestors in litigating the [declaratory relief] action." *Id.* at *3. Although the third party in that case did not file a declaratory relief action, the Court noted that if he had, "different legal considerations would apply." *Id.* at *2 n.3.

Here, the FBI did not intervene in Plaintiffs' OPRA action while it was pending in state court, despite being given ample opportunity to do so. *See supra*, n. 1. Instead, after being made a party to this case by virtue of NJIT's Third-Party Complaint, the FBI chose to bring an affirmative action against NJIT seeking to block the release of records responsive to Plaintiffs' OPRA Requests. *See* FBI Counterclaim. The FBI Counterclaim asserts that some or all of the records requested by Plaintiffs "are not subject to OPRA" and/or "are exempt from disclosure under OPRA[,]" and seeking relief to that effect. *See id.* at 6–11 (First through Fourth Causes of Action). As the Appellate Division has held, however, such an action is not permitted under OPRA, which "expressly grants a right of action *exclusively* to requestors." *New Jersey Firemen's Association*, 443 N.J. Super. at 257. The FBI is no more entitled to bring a cause of action to prohibit the disclosure of information here than were the public agencies in *New Jersey Firemen's Association* or *McLoughlin. See id.*; 2016 WL 6134926. And even though the FBI's action names NJIT as the defendant, it is Plaintiffs—the real parties in interest—who were the target of the FBI's case. Accordingly, as Plaintiffs eventually prevailed in their action by obtaining the release of records responsive to their OPRA Requests, the Court may order that Plaintiffs be compensated from that entity for "work unnecessarily expended" in response to their declaratory action. *McLoughlin*, 2016 WL 6134926 at *3. As OPRA does not specify who a prevailing party's fees may be assessed against, *see* N.J.S.A. 47:1A-6, and given the FBI's affirmative involvement in this case, the Court has discretion to require that some or all of Plaintiffs' attorney's fee award be paid by the FBI. *Cf. New Jerseyans for Death Penalty Moratorium v. New Jersey Dep't of Corr.*, 185 N.J. 137, 156–57 (2005) (holding that although OPRA neither requires nor prohibits an enhancement of fees, an upward adjustment to the lodestar may be appropriate in "unusual circumstances").

If the Court exercises its discretion to require that some or all of the award of reasonable attorney's fees to Plaintiffs under the OPRA be paid directly by the FBI, there is no jurisdictional bar to doing; such a ruling is substantively different from, for example, adjudication of a separate contract-based claim brought by NJIT against the FBI. *See* 28 U.S.C. § 1491. As the FBI noted in the last Joint Status Report, certain types of claims against the federal government are required to be brought in the Court of Federal Claims. *See* JSR, ECF No. 34, at 4. Those types of claims, however, are not implicated by an award of fees to Plaintiffs under OPRA that flows from the FBI's affirmative action seeking to block disclosure of records under that state statute. *See* 28 U.S.C. § 1491(a)(1) (providing the Court of Federal Claims with jurisdiction over "any claim against the United States founded either

The Honorable Leda Dunn Wette, U.S.M.J.  May 9, 2017
Page 12

upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."); *id.* at § 1491(b)(1) (providing concurrent jurisdiction for the Court of Federal Claims and federal district courts for an "action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."). As OPRA's fee shifting provision does not fall within the scope of the jurisdiction of the Court of Federal Claims, an award of attorney's fees directly to Plaintiffs does not present jurisdictional challenges. *See* N.J.S.A. 47:1A-6

### IV. Neither NJIT nor the FBI may voluntarily dismiss their claims against one another without leave; even if they were permitted to do so, this Court can and should retain jurisdiction to adjudicate Plaintiffs' attorney's fee motion.

#### A. At this stage, NJIT and the FBI must seek leave of court to dismiss their pending claims against one another; such leave should be denied.

According to NJIT, the "FBI has requested, and NJIT has agreed, to voluntarily dismiss its third-party complaint against the FBI, without prejudice pursuant to FRCP 41(a)(1)(A) and 41[](c)." JSR, ECF No. 34, at 4. For its part, the FBI indicated at the status conference on April 18, 2017 that it believed its counterclaim against NJIT was moot, and the FBI stated in the most recent JSR that, in accordance with NJIT's position, it "should be dismissed from this action." *Id.* But given the mutual agreements by the parties in this case to stay responsive pleadings and other deadlines without prejudice to the interests of any party, Plaintiffs disagree that either the FBI or NJIT may voluntarily dismiss their claims against one another without leave because—but for those agreements—Plaintiffs, the FBI, and NJIT would have filed responsive pleadings long ago, and voluntary dismissal could significantly prejudice Plaintiffs' interest in obtaining a swift, expeditious resolution of the only issue remaining in this litigation.

Generally speaking, a plaintiff can dismiss an action without a court order by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment[,]" or "a stipulation of dismissal signed by all parties who have appeared." FRCP 41(a)(1). A third-party claim or counterclaim may be dismissed voluntarily without leave of court only "(1) before a responsive pleading is served; or (2) if there is no responsive pleading, before evidence is introduced at a hearing or trial." FRCP 41(c).

Here, the parties twice agreed to stay all responsive pleadings, other motions, and court deadlines while the records responsive to Plaintiffs requests were processed—stays that applied to the parties' responses to NJIT's Third-Party Complaint and the FBI Counterclaim, responses that would otherwise have been filed long ago. *See* JSR, ECF No. 24 (jointly proposing "a stay of all deadlines, as determined by the Federal Rules of Civil Procedure and the Court's Local Rules, for the filing of any and all responsive pleadings or motions in connection with the FBI's Counterclaim, and for any and all other pleadings or motions that may be filed in this matter until June 15, 2016. . . . Plaintiffs and NJIT retain the right to respond to the FBI's Counterclaim, by Answer, Motion to Dismiss, or otherwise, after expiration of the stay."); JSR, ECF No. 27 (jointly proposing to continue the stay "until the FBI completes its review of [the records] and any responsive, non-exempt ones are subsequently produced to Plaintiffs through NJIT"). Plaintiffs expressly retained the right to respond

The Honorable Leda Dunn Wette, U.S.M.J.  May 9, 2017
Page 13

to the FBI Counterclaim, foreclosing the FBI's ability to voluntarily dismiss it without leave. And, in any event, Plaintiffs only agreed to stay deadlines on the condition that such a stay would not prejudice them. Having benefitted from the parties' agreements to stay applicable deadlines in this case, NJIT and the FBI cannot now take the position that they may voluntarily dismiss the NJIT Third-Party Complaint or the FBI Counterclaim over Plaintiffs' objections and without leave of Court under Rule 41(c) because—solely as a result of the stipulated stay orders entered by the Court—responses to those pleadings have not yet been filed. Such conduct threatens to substantially prejudice Plaintiffs who, at this stage, seek nothing more than an expeditious, final determination on the issue of attorney's fees.

In light of the Court's prior stay orders, voluntary dismissal of either the NJIT Third-Party Complaint or the FBI Counterclaim should require leave of Court and such leave should be denied. Notwithstanding the fact that, as discussed above, NJIT could argue in this Court that the FBI—not NJIT—should be required to pay Plaintiffs' reasonable attorney's fees under OPRA, NJIT's position appears to be that (1) the FBI should be dismissed from this action; and (2) this matter should be remanded to the state court (where NJIT will presumably argue, in the FBI's absence, that the FBI is the only party that should be required to pay Plaintiffs reasonable attorney's fees).[6] In addition to forcing Plaintiffs to bear the additional, unnecessary delay and burden of yet another move between federal and state court, in the event that the state court on remand finds the FBI responsible—either in whole or in part—for the award of attorney's fees due Plaintiffs, the FBI will likely resist any effort by the state court to acquire jurisdiction over it, including by re-removing this case back to this Court and creating a never-ending "litigation merry-go-round . . . ." *State of N.J. Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Servs., Inc.*, 719 F. Supp. 325, 337 (D.N.J. 1989) ("*DEP*").

Plaintiffs propose what is undoubtedly the most logical and efficient course of action: namely, that the Court adjudicate Plaintiffs' entitlement to an award of reasonable attorney's fees under N.J.S.A. 47:1A-6, and determine whether NJIT and/or the FBI is required to pay that award, with the participation of all relevant parties to the litigation. It makes no sense for the FBI to drop out of this case *before* this Court hears Plaintiffs' proposed motion for an award of attorney's fees because (1) the amount of fees Plaintiffs are entitled to recover has yet to be determined, and (2), as discussed above, the Court may conclude that the FBI must pay some or all of those fees. *See supra* Section III(B).

Put simply, this Court is closest to the issues in this case and fully informed as to the proceedings that resulted in the release to Plaintiffs of so many records that had been previously withheld in full or in part by NJIT. It is beyond dispute that there is a factual causal nexus between Plaintiffs' litigation and the relief Plaintiffs ultimately obtained, and that the relief had a basis in law.

---

[6] Plaintiffs are puzzled by NJIT's present litigation position. NJIT has been adamant from the outset of this litigation that attorney's fees due Plaintiffs under OPRA should be paid by the FBI. Indeed, the purpose of the NJIT Third-Party Complaint against the FBI was to seek indemnification in the event that such fees were awarded. It is perplexing that, on the eve of an adjudication of Plaintiffs' entitlement to attorney's fees under OPRA, and at the first (and perhaps best) opportunity for NJIT to attempt to hold the FBI responsible for those fees, that NJIT would agree to voluntarily dismiss the FBI—the party NJIT contends is "solely and exclusively liable for [Plaintiffs'] attorneys' fees and costs . . . ." NJIT Ans., at 15.

The Honorable Leda Dunn Wette, U.S.M.J.                                            May 9, 2017
Page 14

Thus, Plaintiffs are a "prevailing party" for purposes of OPRA's fee-shifting provision, and this Court should first make that determination. Who should pay Plaintiffs' reasonable attorney's fees is a determination that should be made hand-in-hand with the determination of prevailing party. After more than a year of negotiation, processing, and release of records—starting from NJIT's position that it would not produce anything more than it had before this lawsuit was initiated—it would be inherently unfair and make no sense to bifurcate these issues and send them to a new and different Court that has no familiarity with this case.

        B. **Even if NJIT and/or the FBI are permitted to dismiss their claims against one another, this Court can and should retain jurisdiction over Plaintiffs' motion for an award of attorney's fees under OPRA.**

In the parties' Joint Status Report of March 6, 2017, NJIT indicated that it believes "[u]pon dismissal of NJIT's claims against the FBI . . . this Court will lose jurisdiction over Plaintiffs' remaining fee claim and the claim should accordingly be remanded to New Jersey State Court for adjudication where NJIT will vigorously oppose the claim." JSR, ECF No. 34, at 4. However, even assuming, *arguendo*, that NJIT's Third-Party Complaint is dismissed—and that the FBI Counterclaim is also dismissed[7]—it is entirely within this Court's discretion to retain jurisdiction over this matter for the purpose of ruling on Plaintiffs' anticipated motion for an award of attorney's fees under OPRA.

Federal district courts have been empowered by Congress to exercise supplemental jurisdiction over claims that are part of the "same case or controversy" as the claim establishing federal jurisdiction. 28 U.S.C. § 1367. Courts may, in their discretion, decline to exercise such supplemental jurisdiction in a variety of circumstances, including if the claims over which it had original jurisdiction are dismissed. *See id.* at § 1367(c). In the Third Circuit it is well established that federal courts have both the constitutional and statutory authority to adjudicate related state law claims after the original basis for federal jurisdiction is removed. *See, e.g.*, *Williams v. Newark Beth Israel Med. Ctr.*, 322 F. App'x 111, 113 (3d Cir. 2009); *Lentino v. Fringe Emp. Plans, Inc.*, 611 F.2d 474 (3d Cir. 1979); *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492 (3d Cir. 1996); *see also DEP*, 719 F. Supp. at 334. In deciding whether to remand a state law matter or retain jurisdiction, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc. v. Delaware Cty., Pa.*, 983 F.2d 1277, 1284 (3d Cir. 1993); *see also Trans Penn Wax Corp. v. McCandless*, 50

---

[7] Here, the Court acquired jurisdiction when this case was removed by the FBI pursuant to 28 U.S.C. § 1442(a)(1) because the NJIT Third-Party Complaint was brought against the agency. *See* Notice of Removal, ECF No. 1, ¶¶ 7–8. That statute confers jurisdiction on the basis of the identity of the FBI as an agency of the United States. *See* 28 U.S.C. § 1442(a)(1). When the FBI removed this action, the Court acquired supplemental jurisdiction over Plaintiffs' OPRA and state common law claims. *See* 28 U.S.C. § 1367; *DEP*, 719 F. Supp. at 334 ("When an action is properly removed pursuant to section 1442(a)(1), a federal court can exercise ancillary jurisdiction over the entire controversy."). When the FBI filed its Counterclaim against NJIT, this Court secured a second, independent source of jurisdiction over this entire case. *See* 28 U.S.C. § 1345 (providing federal district courts with jurisdiction over all proceedings commenced by the United States or any agency thereof), *id.* at § 1367. Accordingly, if and only if *both* NJIT's Third-Party Complaint and the FBI's Counterclaim are dismissed is this Court required to evaluate whether it should remand this matter to state court.

The Honorable Leda Dunn Wette, U.S.M.J.  May 9, 2017
Page 15

F.3d 217, 233 (3d Cir. 1995) ("In deciding whether to remand, the district court should consider what best serves the principles of economy, convenience, fairness, and comity.").

Assuming, *arguendo*, that both the NJIT Third-Party Complaint and the FBI Counterclaim are dismissed, the factors identified by the Third Circuit weight heavily in favor of this Court retaining jurisdiction over this matter to adjudicate the issue of attorney's fees. *See Growth Horizons*, 983 F.2d at 1284. As to judicial economy, this Court has presided over essentially the entirety of this case; it is familiar with the procedural history, the parties, and their positions. It has invested considerable time in this matter, including holding status conferences to address a variety of issues on December 18, 2015, January 4, 2016, January 22, 2016, January 29, 2016, March 3, 2016, and April 18, 2017. If this case were remanded back to state court, the judge there would be required to piece together the procedural history from a series of status reports and other filings. As the Third Circuit put it in *Williams*, to remand this matter "to state court and start anew, after the time and resources the parties and the Court have expended, would be against the interests of judicial economy . . . ." 322 F. App'x at 113.

Convenience and fairness to the litigants also weigh in favor of this Court retaining jurisdiction. *See Growth Horizons*, 983 F.2d at 1284. As noted above, this case involves private citizens, a New Jersey state entity, and the FBI, all making claims against one of the other parties. A somewhat similar case was confronted by this Court in *DEP*, where the New Jersey Department of Environmental Protection brought a case in state court against several local entities. *See* 719 F. Supp. at 328. A township-defendant in the case brought a third-party complaint against the federal Environmental Protection Agency ("EPA"), which removed the case to this Court pursuant to 28 U.S.C. § 1441 and then successfully obtained dismissal of the township's claim on sovereign immunity grounds. *See id.* at 329. Although that dismissal destroyed the original basis for the Court's jurisdiction, the Court exercised its discretion to retain the action twice:

> By retaining jurisdiction now, the court hopes to avoid creating a litigation "merry-go-round" of waste and delay when, on remand, federal claims are asserted and/or federal parties joined, leading once again to removal to this court.

*DEP*, 719 F. Supp. at 329, 334–42.[8] Just as in *DEP*, this case has already faced delay as a result of the FBI's removal of this action following the filing of NJIT's Third-Party Complaint. To require Plaintiffs to now go back to state court without the FBI as a party, and with the expectation that NJIT will argue that attorney's fees should be paid by the FBI under OPRA, would be manifestly unfair. Plaintiffs are also unaware of any benefit that would be served by remanding this case at its very end, and neither the FBI nor NJIT has not offered any. Given that this Court is already familiar with the case, the convenience of the parties is better served by this Court simply resolving the sole remaining issue in this litigation.

---

[8] It should be noted that in *DEP* this Court retained jurisdiction of the state law claims under a more demanding standard than it is required to meet now, being constrained at the time by the standard set out in *Lovell Manufacturing v. Export-Import. Bank of the U.S.*, 843 F.2d 725 (3d Cir. 1988). That standard was subsequently superseded by amendments to 28 U.S.C. § 1376. *See Growth Horizons*, 983 F.2d at 1285 n. 14 (3d Cir. 1993).

The Honorable Leda Dunn Wette, U.S.M.J.  May 9, 2017
Page 16

In sum, "judicial economy, convenience, and fairness to the litigants[,]" would be better served by this Court retaining jurisdiction, *Growth Horizons*, 983 F.2d at 1284, in the event that both NJIT's Third-Party Complaint against the FBI and the FBI's Counterclaim against NJIT are dismissed. This Court should, even if the FBI is no longer a party to this case, exercise its discretion to adjudicate Plaintiffs' motion for a fee award under OPRA.

### V. Conclusion

For all the reasons herein, Plaintiffs respectfully request that the Court enter an order setting a briefing schedule on Plaintiffs' motion for an award of reasonable attorney's fees under OPRA.

Respectfully submitted,

_____
BRUCE S. ROSEN
McCUSKER, ANSELMI, ROSEN & CARVELLI, P.C.
210 Park Ave., Suite 301
Florham Park, NJ 07932
Tel: (973) 635-6300
Fax: (973) 635-6363
brosen@marc-law.com
*Counsel of Record for Plaintiffs*

Katie Townsend (*pro hac vice*)
Adam A. Marshall (*pro hac vice*)
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Tel: (202) 795-9300
Fax: (202) 795-9310
ktownsend@rcfp.org
amarshall@rcfp.org
*Attorneys for Plaintiffs*

cc: Gary Potters, Esq. (via ECF)
   *Attorney for Defendants/Third-Party Plaintiffs/Third-Party Defendants New Jersey Institute of Technology and Clara Williams*
   Andrew Carmichael, Esq. (via ECF)
   Christopher Amore, Esq. (via ECF)
   *Attorneys for the Federal Bureau of Investigation*