UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL GOLDEN and TRACY LOCKE,<br><br>　　　　*Plaintiffs*,<br><br>　　　　v.<br><br>NEW JERSEY INSTITUTE OF TECHNOLOGY and CLARA WILLIAMS, in her capacity as Custodian of Records for the New Jersey Institute of Technology,<br><br>　　　*Defendants/Third-Party Plaintiffs/Third-Party Defendants*,<br><br>　　　　v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>　　　*Third-Party Defendant/ Third-Party Plaintiff*. | HON. MADELINE C. ARLEO<br><br>Civ. Action No. 2:15-cv-08559-MCA-LDW<br><br>REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES |

Katie Townsend (*pro hac vice*)
Adam A. Marshall (*pro hac vice*)
THE REPORTERS COMMITTEE FOR
　　　FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Tel: (202) 795-9300
Fax: (202) 795-9310
ktownsend@rcfp.org
amarshall@rcfp.org
*Attorneys for Plaintiffs*

Bruce S. Rosen
MCCUSKER, ANSELMMI, ROSEN & CARVELLI, P.C.
210 Park Ave., Suite 301
Florham Park, NJ 07932
Tel: (973) 635-6300
Fax: (973) 635-6363
BRosen@marc.law

*Counsel of Record for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 3

  I.   NJIT's "Stipulated Facts" should be disregarded. ........................................... 3

 II.  Plaintiffs are entitled to reasonable attorneys' fees under OPRA's mandatory
      fee-shifting provision. ..................................................................................... 4

     A.  Because there is a clear causal nexus between Plaintiffs' lawsuit and
         NJIT's release of records Plaintiffs are the prevailing parties. ................... 4

     B.  NJIT cannot transfer its obligations under OPRA to a "de facto records
         custodian" to avoid the Act's mandatory fee-recovery provision. .............. 7

III.  Plaintiffs' should be awarded $197,829.50 in reasonable attorneys' fees in
      connection with this matter. .......................................................................... 13

     A.  Plaintiffs' attorneys' rates and hours are reasonable. ............................... 13

     B.  Plaintiffs' request for a fee enhancement should be granted. ................... 14

     C.  Additional Attorneys' Fees in Connection with Plaintiffs' Reply ............ 15

CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Gannett New Jersey Partners, LP v. County of Middlesex*, 379 N.J. Super. 205 (N.J. Super. Ct. App. Div. 2005) ......................................................................... 11

*Graves Lumber Co. v. Croft*, 20 N.E.3d 412 (Ohio Ct. App. 2014) ..................... 3, 4

*K.L. v. Evesham Township Board of Education*, 23 N.J. Super. 337 (N.J. App. Div. 2011) ..................................................................................... 5

*Kneeland v. Luce*, 141 U.S. 437 (1891) ............................................................... 3, 4

*Mason v. City of Hoboken*, 196 N.J. 51 (2008) ................................................... 4, 5

*Naughton v. Harmelech*, No. CIV. 2:09-05450, 2013 WL 5604344 (D.N.J. Oct. 11, 2013) ........................................................................................................... 3

*New Jersey Bldg. Laborers Statewide Ben. Funds v. Perfect Concrete Cutting*, No. CIV.A.2:10-1540, 2010 WL 2292102 (D.N.J. June 2, 2010) ..................... 13

*New Jerseyans for Death Penalty Moratorium v. New Jersey Department of Corrections*, 185 N.J. 137 (2005) ................................................................... 14

*Paff v. Borough of Garwood*, No. A-2013-10T3, 2012 WL 5512397 (N.J. Super. Ct. App. Div. Nov. 15, 2012) ........................................................... 6

*Spectraserv, Inc. v. Middlesex County Utilities Authority*, 416 N.J. Super. 565 (N.J. Super. Ct. App. Div. 2010) ......................................................................... 6, 7

## Statutes

N.J.S.A. 47:1A-1.1 ................................................................................................ 11

N.J.S.A. 47:1A-1–13 ............................................................................................. 11

N.J.S.A. 47:1A-6 ..................................................................................................... 1

# INTRODUCTION

Plaintiffs Daniel Golden and Tracy Locke (collectively, "Plaintiffs") respectfully submit this reply in support of their motion for an award of attorneys' fees under the New Jersey Open Public Records Act, N.J.S.A. 47:1A-1, *et seq.* ("OPRA" or the "Act") from the New Jersey Institute of Technology and its Custodian of Records, Clara Williams (collectively, "NJIT").

NJIT's opposition to Plaintiffs' motion for attorneys' fees rests on its argument that OPRA's mandatory fee-recovery provision, N.J.S.A. 47:1A-6, should not apply in this case because, according to NJIT, in failing to comply with its obligations under the Act, NJIT was only blindly following instructions given to it by the Federal Bureau of Investigation ("FBI"). NJIT does not cite a single statutory provision or court decision supporting that extraordinary proposition, and its request that this Court invent a custom-tailored exception for NJIT from a mandatory directive of the New Jersey Legislature should be summarily rejected.

To be clear, this matter is and has always been a challenge properly brought under New Jersey state law to NJIT's improper withholding of public records requested by Plaintiffs (including a Pulitzer Prize-winning journalist) under OPRA. As the record shows, Plaintiffs made OPRA requests to NJIT, a New Jersey state entity, for certain communications of NJIT employees. NJIT withheld records requested by Plaintiffs, initially citing exemptions to disclosure under New Jersey

state law.  It was not until after Plaintiffs filed this lawsuit against NJIT that the vast majority of the previously withheld records requested by Plaintiffs were provided to them.  Plaintiffs are thus entitled to reasonable attorneys' fees from NJIT under OPRA's mandatory fee-recovery provision.  That NJIT improperly denied Plaintiffs' OPRA requests at the request—or "direction"—of the FBI is irrelevant to *Plaintiffs'* entitlement to an award of attorneys' fees.  And NJIT has effectively acknowledged as much, filing a claim for indemnification against the FBI after this case was filed with the aim of recovering from the FBI the amount of Plaintiffs' attorneys' fees it knew it would be liable for under OPRA.  *See* ECF No. 2 at 13–17 (NJIT's Third-Party Complaint against FBI).

NJIT's true complaint lies against the FBI—whom NJIT plainly feels left it out to dry, and against whom NJIT has a pending indemnification claim.  *See id.* Plaintiffs take no position on that dispute.  NJIT's dispute with the FBI, however, is not a basis to deprive Plaintiffs, who properly (and successfully) sought to vindicate their rights under OPRA, of their entitlement to a mandatory award of reasonable attorneys' fees under the Act.  NJIT's argument is not only contrary to the plain language of OPRA, it would also, if accepted, undermine the efficacy of the Act by giving state entities like NJIT an incentive to try to outsource their statutory duties under OPRA to third-parties in the hopes of avoiding application of OPRA's mandatory fee-recovery provision if their failure to comply with the

Act is challenged in court.  For the reasons set forth in Plaintiffs' motion for attorneys' fees and herein, Plaintiffs' should be awarded their costs and reasonable attorneys' fees in the amount of $197,829.50.

## ARGUMENT

**I.     NJIT's "Stipulated Facts" should be disregarded.**

For purposes of Plaintiffs' motion for attorneys' fees, the Court should disregard the "Stipulated Facts" provided by NJIT that were apparently agreed to by NJIT and the FBI.  A stipulation is binding only upon those parties "who in fact assented to it."  *Kneeland v. Luce*, 141 U.S. 437, 440 (1891)*; see also Naughton v. Harmelech*, No. CIV. 2:09-05450, 2013 WL 5604344, at *3 (D.N.J. Oct. 11, 2013) (noting that a stipulation is valid "if it is entered into" and approved by the Court.  Thus, "[w]hen there are multiple parties, a stipulation is not binding upon a party who did not sign it, but remains 'effective and binding' as to the parties who did sign it."  *Graves Lumber Co. v. Croft*, 20 N.E.3d 412, 420 (Ohio Ct. App. 2014) (citation omitted).

Here, NJIT filed a document titled "Stipulated Facts" with its opposition to Plaintiffs' motion for attorneys' fees.  *See* ECF. No. 54-2.  The purported "facts" set forth therein appear to have been stipulated to by NJIT and the FBI, *see* ECF No. 54-2 at 1, both of whom have an active dispute over who should pay Plaintiffs' attorneys' fees in this case and, thus, have a shared interest in opposing Plaintiffs'

motion.  Plaintiffs, however, did not agree to those "Stipulated Facts."  *See id.*

Accordingly, they should be disregarded for purposes of ruling on Plaintiffs'

motion for attorneys' fees.  *See*, *e.g.*, *Kneeland*, 141 U.S. at 440; *Graves Lumber

Co.*, 20 N.E.3d at 420.  Had NJIT wanted to submit *evidence* proving these "facts"

to the Court in the form of an admissible declaration or other instrument in support

of its opposition, it could have done so; indeed, its counsel filed a certification

averring to other facts.  *See* Cert. of Gary Potters, ECF No. 54-1.  However, an

unsupported stipulation between NJIT and the FBI cannot be binding on Plaintiffs

and should not be considered by the Court vis-à-vis Plaintiffs' motion.

## II.   Plaintiffs are entitled to reasonable attorneys' fees under OPRA's mandatory fee-shifting provision.

### A. Because there is a clear causal nexus between Plaintiffs' lawsuit and NJIT's release of records Plaintiffs are the prevailing parties.

For the reasons set forth in Plaintiffs' motion for attorneys' fees, Plaintiffs

are clearly the "prevailing part[ies]" in this action for purposes of OPRA's

mandatory fee-recovery provision.  Under the catalyst theory adopted by the New

Jersey Supreme Court, to be a prevailing party that is entitled to recover fees an

OPRA requester/plaintiff need only show "(1) a factual causal nexus between

[their] litigation and the relief ultimately achieved; and (2) that the relief ultimately

secured by plaintiffs had a basis in law." *Mason v. City of Hoboken*, 196 N.J. 51,

76 (2008) (quotation and citation omitted).

As the record makes clear, before Plaintiffs' lawsuit was filed, NJIT—after consulting with a representative from the FBI—denied access to the vast majority (and in the case of Plaintiffs' Second and Third Requests, all) of the records sought by Plaintiffs.  *See* Br. in Support of Pls.' Mot. for Attorneys' Fees, ECF No. 53-1, at 1–14.  After Plaintiffs' lawsuit was filed, NJIT changed course: it abandoned its previous claims of exemptions under OPRA—conceding that they were not legally defensible—sued the FBI for indemnification in order to make the FBI a party to this case, and thereafter chose to work with the FBI to process and release the records requested by Plaintiffs that NJIT had previously withheld in part or in full. *See id.*  There is simply no question that the release of those records was prompted by the filing of Plaintiffs' lawsuit against NJIT; Plaintiffs would not have obtained the records they requested had they not filed suit.  Thus, as Plaintiffs pointed out in their motion for attorneys' fees, the facts of this case mirror those in *K.L. v. Evesham Township Board of Education*, 23 N.J. Super. 337 (N.J. App. Div. 2011), which NJIT makes no effort to distinguish.  There, as here, a clear "causal link" exists between this lawsuit and the relief Plaintiffs secured.

NJIT's argument that "[a]ny factual causal link was completely broken the moment the FBI overtook the review and production of documents," NJIT Br. at 15, fundamentally misapprehends the catalyst theory.  *See Mason*, 196 N.J. 51. The FBI's involvement in this lawsuit—which was brought about by NJIT—has no

bearing on whether or not Plaintiffs are the prevailing parties here; it does not speak to whether or not Plaintiffs' lawsuit caused the release of records previously withheld by NJIT.

The cases cited by NJIT do not support its arguments. *Paff v. Borough of Garwood*, No. A-2013-10T3, 2012 WL 5512397 (N.J. Super. Ct. App. Div. Nov. 15, 2012), concerned whether a plaintiff should recover attorneys' fees under New Jersey common law, not OPRA's mandatory fee-recovery provision.[1] *See id.* at *3–4. The court in *Paff* did not address whether a causal nexus existed between the plaintiff's lawsuit and the release of a video plaintiff had requested. *See id.*

NJIT's heavy reliance on *Spectraserv, Inc. v. Middlesex County Utilities Authority*, 416 N.J. Super. 565 (N.J. Super. Ct. App. Div. 2010), is likewise misplaced. *Spectraserv* involved an "overly broad" request that the agency— acting in good faith—struggled to respond to in a timely manner given its discovery obligations to the requester in a separate construction lawsuit that the requester, a contractor, had recently filed against the agency. *See id.* The Appellate Division concluded that the plaintiff's request, which was connected to his separate pending litigation against the agency, was "overly broad and generalized and therefore improper under OPRA," *id.* at 578. Moreover, in

---

[1] The video at issue in that case was also found to be exempt from disclosure under N.J.S.A. 47:1A–1.1, *id.* at *3. Here there has been no judicial determination that any of the records sought by Plaintiffs were subject to any OPRA exemption.

*Spectraserv*, "[f]rom the very inception, in its initial response . . . the [agency] *acknowledged its obligation to produce non-exempt documents* and, in fact, made many of these documents available for inspection in advance of any court intervention or directive." *Id.* at 584 (emphasis added). The agency even offered to coordinate its production of records under OPRA with its discovery responses in the requester's separate lawsuit. *See id.* None of these facts or circumstances are present here. NJIT denied Plaintiffs' Second and Third Requests in their entirety, and did not make any offer to produce records responsive to them before this lawsuit was filed. *See* Pls.' Br., ECF No. 53-1, at 1–8. To the contrary, NJIT made clear that it would not release records in response to those requests absent a court order requiring it to do so. *Spectraserv* is of no help to NJIT.

## B. NJIT cannot transfer its obligations under OPRA to a "de facto records custodian" to avoid the Act's mandatory fee-recovery provision.

NJIT's opposition to Plaintiffs' motion for an award of attorneys' fees rests on its argument that, in withholding the records requested by Plaintiffs, NJIT was simply blindly following the instructions of the FBI, and thus should be treated as having been absolved of its obligations under OPRA. NJIT cites no legal authority, whatsoever, in support of its position that its decision to consult with the FBI concerning Plaintiffs' OPRA requests before improperly denying them is a basis for stripping Plaintiffs of their statutory entitlement to reasonable attorneys' fees under OPRA's mandatory fee-recovery provision. Its argument is meritless.

As an initial matter, NJIT makes a series of conclusory and hyperbolic assertions about the nature of the FBI's "direction[s]" to NJIT vis-à-vis Plaintiffs' OPRA requests. *See, e.g.*, NJIT Br., ECF No. 54, at 21 (arguing that it "did not have discretion to ignore the FBI"); *id.* at 14 (stating there was "oral and written direction by the FBI to NJIT to withhold certain documents from production . . ."); *id.* at 15 (arguing that the FBI "directed [NJIT] to 'stand down' in relation to [P]laintiffs' OPRA requests"). Specifically, NJIT claims that it concluded it was required to withhold the records sought by Plaintiffs at the FBI's request because the FBI had purportedly told NJIT that "the confidential and privileged nature of [the requested records] prohibited disclosure." NJIT Br. at 1. *See also id.* at 27 (arguing that the FBI expressed "concern over the extreme confidentiality associated with the subject documents . . ."). Yet even a cursory examination of the records that were eventually produced to Plaintiffs—records that NJIT had refused to release in response to Plaintiffs' Second and Third Requests—belies any such concern. Those records include, for example:

- An e-mail from a Dean at NJIT to an FBI Special Agent forwarding the full text of an article written by Plaintiff Daniel Golden, Second Townsend Decl. Ex. B;

- An email chain concerning the postponement of the first quarterly meeting of the New Jersey chapter of the FBI National Academy Associates due to a blizzard, Second Townsend Decl. Ex. C;

- An e-mail from an FBI Special Agent stating, *inter alia*, "[t]he attached documents are UNCLASSIFIED.  <u>Although UNCLASSIFIED, these reports should not be released to the media, general public, or posted on any publically accessible forum, to include the Internet or public websites.</u>"  Second Townsend Decl. Ex. D (underlining in original).  One of the attachments to that e-mail is a report from the American Academy of Arts & Sciences, which is publicly available on its website.  *Compare id. with* http://amacad.org/multimedia/pdfs/publications/researchpapersmonographs/insiderThreats.pdf;[2]

-  A public statement and report delivered by then-Director of National Intelligence James Clapper to the Senate Select Committee on Intelligence on March 12, 2013.  *See* Second Townsend Decl. Ex. E.  That statement and report were published online by both the Senate (https://www.intelligence.senate.gov/sites/default/files/hearings/clapper%20%283%29.pdf) and the Director of National Intelligence (https://www.dni.gov/files/documents/Intelligence%20Reports/2013%20ATA%20SFR%20for%20SSCI%2012%20Mar%202013.pdf).

These are just a few examples of records that NJIT improperly withheld from Plaintiffs, apparently at the request of the FBI.  Had NJIT reviewed the records

---

[2] There is no evidence in this case that anyone at NJIT communicating with the FBI had a security clearance authorizing them to receive classified information.

requested by Plaintiffs, as the Act required it to do—rather than simply withholding all responsive records at the FBI's request—it would have been immediately apparent to NJIT that it could not lawfully withhold these (and many other) records requested by Plaintiffs under OPRA, and that the FBI's purported claimed need for "extreme confidentiality" was, at best, unfounded.  Indeed, as described in Plaintiffs' motion, other public universities who did review their records after they were requested by Plaintiffs in connection with Mr. Golden's book concluded—despite an FBI instruction to withhold responsive records—that doing so would violate their obligations under applicable state law.  *See* Decl. of Daniel Golden, ECF No. 53–2, ¶¶ 6–9 & Ex. A (University of South Florida stating in letter to Mr. Golden that "the FBI demanded the return of the same emails that were produced with redactions in response to your public records request.  USF did not relinquish its custody of the emails based on USF's obligations under Florida's Public Records Law.").

NJIT's novel contention that Plaintiffs are not entitled to reasonable attorneys' fees under OPRA's mandatory fee-recovery provision because the FBI purportedly "assumed the role of de facto records custodian under OPRA[,]"  NJIT Br. at 1 (underlining in original); *see also id.* at 24–26, is both legally and factually baseless, and should be rejected by the Court.

First, there simply is no such thing as a "de facto records custodian" under

10

OPRA.  *See* N.J.S.A. 47:1A-1–13.[3]  There is *no* provision in OPRA that permits a state agency to transfer any of its legal obligations under the Act to another entity. The dicta from *Gannett New Jersey Partners, LP v. County of Middlesex*, 379 N.J. Super. 205 (N.J. Super. Ct. App. Div. 2005) that is cited by NJIT suggests, at most, that interested third parties should be given an appropriate opportunity to weigh in on the issue of whether certain records are exempt under OPRA.  *See id.*  That unremarkable proposition is neither here nor there.  Plaintiffs have never taken the position that it was improper for NJIT, as the records custodian, to consult with the FBI about whether certain records are exempt under OPRA, or even for the FBI to assert arguments on its own behalf to that end.  Indeed, Plaintiffs agreed to a delay of proceedings in the state court, at the request of NJIT, to give the FBI an opportunity to intervene in this matter, which the FBI declined to do.  *See* Letter from Gary Potters to Judge Wettre (Dec. 17, 2015), ECF No. 5.  NJIT's decision to consult with the FBI concerning how it should respond to Plaintiffs' OPRA requests, however, did not relieve NJIT of its obligations under the Act, including its obligation to respond to Plaintiffs' OPRA requests, and to defend its withholding of any of the records requested by Plaintiffs.

Second, in addition to being legally groundless, the notion that the FBI was

---

[3] NJIT nonsensically suggests that Plaintiffs should have "name[d] the FBI as a direct party defendant[.]"  NJIT Br. at 2.  The FBI is a federal agency; it is not subject to OPRA.  *See* N.J.S.A. 47:1A-1.1 (defining "[p]ublic agency" and "agency" as various entities within New Jersey and its political subdivisions).

the "de facto" custodian of the records sought by Plaintiffs is contrary to the factual record.  NJIT had possession of the records sought by Plaintiffs, and Clara Williams was its records custodian for purposes of the Act.  *See* Verified Compl., ECF No. 1-1 ¶ 11; NJIT Verified Ans. to Pls.' Verified Comp., ECF No. 2, ¶ 11 (admitting that Clara Williams is NJIT's records custodian under OPRA); Potters Cert., ECF No. 54-1, Ex. B ¶¶ 1, 17–25 (Certification of Defendant Clara Williams testifying that she is the "OPRA Custodian of Records for New Jersey Institute of Technology . . ." and describing steps NJIT took to locate and compile records responsive to Plaintiffs' First Request); Letter from Gary Potters to Katie Townsend (Mar. 30, 2017), ECF No. 53-3 (stating that "NJIT provided copies of all responsive documents to the FBI in or about October, 2015.").  Indeed, at the outset of this litigation not only did NJIT not move to dismiss on the basis that it was not the custodian of the records at issue under OPRA, but *it sued Plaintiffs* for allegedly failing to pay $26.56 in costs pursuant to the Act that were associated with Plaintiffs' First Request.  *See* NJIT Ans., ECF No. 2, at 9–12.  In short, NJIT cannot now, as a factual matter, argue that it was not the custodian of the records requested by Plaintiffs simply because it elected to consult with the FBI concerning how it should respond to Plaintiffs' OPRA requests and "provided copies of all responsive records" that were in its possession to the FBI.  Letter from Gary Potters to Katie Townsend (Mar. 30, 2017), ECF No. 53-3.

### III. Plaintiffs should be awarded $197,829.50 in reasonable attorneys' fees in connection with this matter.

#### A. Plaintiffs' attorneys' rates and hours are reasonable.

NJIT does not contest the reasonableness of Plaintiffs' attorneys' hourly rates or their entitlement to a fully compensatory award under the lodestar calculation. *See* NJIT Br. at 28–30. Nor does NJIT offer any specific objection to the reasonableness of the hours expended by Plaintiffs' attorneys in this matter— many of which were expended solely as a result of NJIT's position regarding Plaintiffs' entitlement to attorneys' fees under OPRA's mandatory fee-recovery provision. *Cf. New Jersey Bldg. Laborers Statewide Ben. Funds v. Perfect Concrete Cutting*, No. CIV.A.2:10-1540, 2010 WL 2292102, at *1 (D.N.J. June 2, 2010) ("An undeveloped argument in a brief is waived.").

While NJIT suggests that Plaintiffs' fees are unnecessarily high because they should have made a federal Freedom of Information Act ("FOIA") request to the FBI instead of an OPRA requests to NJIT for the records at issue, there is "no legal authority [] cited for this proposition[,]" *id.*, which, in any event, is contrary to New Jersey law. Mr. Golden, an award winning, well-respected journalist, and Ms. Locke, who was assisting Mr. Golden with his research, were fully entitled to submit OPRA requests to NJIT, FOIA requests to the FBI, both, or neither. Here, Plaintiffs sought records of NJIT—a New Jersey state entity—and, accordingly, submitted requests for those records pursuant to New Jersey state law. NJIT's

13

contention that Plaintiffs' exercise of their right to request public records from a New Jersey government entity "reeks of bad faith," NJIT Br. at 30, is both specious and offensive.  Plaintiffs followed the law; it was NJIT that did not.

## B. Plaintiffs' request for a fee enhancement should be granted.

NJIT argues that Plaintiffs should not be granted a fee enhancement under the criteria identified by the New Jersey Supreme Court in *New Jerseyans for Death Penalty Moratorium v. New Jersey Department of Corrections,* 185 N.J. 137 (2005) ("*NJDPM*").  In support of that argument, NJIT contends, first, that it did not issue blanket denials in response to Plaintiffs' Second and Third Requests. NJIT Br. at 28–29.  The factual record before the Court, however, make perfectly clear that is exactly what happened.   *See* Verified Compl., ECF No. 1-1, Background & Factual Allegations ¶¶ 12–23 & Exs. E, G; NJIT Verified Ans. to Pls.' Verified Comp., ECF No. 2, ¶¶ 12–23.

Second, NJIT argues that no fee enhancement is appropriate because "[t]his matter veered away from 'garden variety' . . . ."  NJIT Br. at 29.  Plaintiffs agree with NJIT on this point.   Yet it counsels *in favor of*, not against, the fee enhancement sought by Plaintiffs.  *See NJDPM*, 185 N.J. at 157.  It is the "'garden variety' OPRA matter . . . [where] enhancement will likely be *inappropriate*."  *Id.* (emphasis added).  The fact that this case "veered away" from the ordinary OPRA case because of NJIT's decision to sue the FBI, making it a party to this case, only

14

supports a fee enhancement.

### C. Additional Attorneys' Fees in Connection with Plaintiffs' Reply

As set forth in the attached second declaration of Katie Townsend, Plaintiffs' counsel spent additional time preparing this reply, which they request be added to the amounts identified in their motion and accompanying brief with a 25% fee enhancement for a total of $197,829.50, as follows:

| Attorney | Hours Spent | LSI *Laffey* Rate | Lodestar | Lodestar + 25% enhancement |
|---|---|---|---|---|
| Katie Townsend | 5.3 hours | $636/hr | $3,370.80 | $4,213.50 |
| Adam A. Marshall | 13.2 hours | $258/hr | $3,405.60 | $4,257.00 |

### CONCLUSION

For all the reasons herein, Plaintiffs respectfully request that the Court grant their motion for attorneys' fees and award them $197,829.50.

Dated: January 12, 2018.

Respectfully submitted,

*s/* Bruce Rosen_____

Katie Townsend (*pro hac vice*)
Adam A. Marshall (*pro hac vice*)
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, DC 20005
Tel: (202) 795-9300
Fax: (202) 795-9310
ktownsend@rcfp.org
amarshall@rcfp.org
*Attorneys for Plaintiffs*

Bruce S. Rosen
MCCUSKER, ANSELMI, ROSEN &
CARVELLI, P.C.
210 Park Ave., Suite 301
Florham Park, NJ 07932
Tel: (973) 635-6300
Fax: (973) 635-6363
BRosen@marc.law
*Counsel of Record for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was filed with the Clerk of the Court using the ECF system, which will automatically send notification of such filing and serve counsel for the following parties:

Gary Potters, Esq. (via ECF)
 *Attorney for Defendants/Third-Party Plaintiffs/Third-Party Defendants New Jersey Institute of Technology and Clara Williams*

Andrew Carmichael, Esq. (via ECF)
Christopher Amore, Esq. (via ECF)
 *Attorneys for the Federal Bureau of Investigation*


This 12th day of January, 2018.

s/ Bruce Rosen  _

1