**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DANIEL GOLDEN and TRACY LOCKE,**<br><br>*Plaintiffs*,<br>v.<br><br>**NEW JERSEY INSTITUTE OF TECHNOLOGY and CLARA WILLIAMS,** in her capacity as Custodian of Records for the New Jersey Institute of Technology,<br><br>*Defendants/Third-Party Plaintiffs*,<br>v.<br><br>**FEDERAL BUREAU OF INVESTIGATION,**<br><br>*Third-Party Defendant.* | **Civil Action No. 15-8559**<br><br>**ORDER** |

**THIS MATTER** having come before the Court by way of Magistrate Judge Wettre's Report and Recommendation dated April 25, 2018, in which Judge Wettre recommended that the District Court deny Plaintiffs Daniel Golden's and Tracy Locke's (together, "Plaintiffs") motion for attorneys' fees, ECF Nos. 53, 61;

and having considered Plaintiffs' Objections to the Report and Recommendation, ECF No. 62, and Defendants New Jersey Institute of Technology's ("NJIT") and Clara Williams's (together with NJIT, "Defendants") Opposition to Plaintiffs' Objections to the Report and Recommendation, ECF No. 65;

and it appearing that, in 2015, Plaintiffs served three requests on NJIT, pursuant to New Jersey Open Public Records Act, N.J.S.A. § 47:1A-1 et seq. ("OPRA"), for communications between NJIT and the Federal Bureau of Investigations ("FBI"), Report and Recommendation, ECF No. 61 ("R&R"), at 2;

and it appearing that Plaintiffs' first request involved nearly 4,000 of responsive records that contained FBI directives against disclosure (the "FBI Records"), id. at 3;

and it appearing that NJIT notified the FBI of Plaintiffs' first OPRA request, and the FBI informed NJIT the FBI Records were property of the federal government and could not be released without FBI approval, id. at 4;

and it appearing that the FBI reviewed the FBI Records, redacted some of them, and marked others as "classified," all without the involvement of NJIT, id.;

and it appearing that the FBI again instructed NJIT not to distribute the FBI Records "without the FBI's prior written approval, in conformance with" the Freedom of Information Act ("FOIA") and advised NJIT that information that is "law enforcement sensitive and may implicate criminal and/or national security interests . . ." is exempt from disclosure under FOIA, id.;

and it appearing that NJIT's first response to Plaintiffs quoted the FBI's warnings against disclosure, cited to OPRA exemptions for domestic security, security measures, and surveillance techniques, and attached and referred to the FBI's letter instructing NJIT not to release the FBI Records without the FBI's approval, id. at 4-5;

and it appearing that Plaintiffs submitted two additional, almost identical OPRA requests, to which NJIT responded by citing back to its first response, id. at 5;

and it appearing that, in September 2015, Plaintiffs' filed this action in the Superior Court of New Jersey, Law Division, Essex County, against NJIT and Williams for access to the FBI

Records under OPRA and the common law right of access, and the Superior Court ordered NJIT to show cause why it should not declare NJIT to be in violation of OPRA and the common law right of access , id. at 5-6;

and it appearing that NJIT filed a Third-Party Complaint against the FBI, seeking indemnification for any exposure under OPRA, because NJIT withheld and redacted documents at the FBI's direction, id. at 6;

and it appearing that, in December 2015, at the Order to Show Cause hearing, the Superior Court declared premature the issues raised (1) because the FBI advised of their need for additional time to address their course of action and review the redacted and exempted FBI Records and (2) because of NJIT's compliance with the written direction of the FBI not to produce the FBI Records, id.;

and it appearing that the Superior Court directed the FBI to decide its course of action and commence review of the redacted and exempted FBI Records, id. at 6-7;

and it appearing that, later in December 2015, the FBI removed the action to this Court and, in February 2016, filed a Counterclaim against NJIT seeking declarations that NJIT was enjoined from releasing documents the FBI had created and sent to NJIT, id. at 7-8;

and it appearing that the FBI averred that it had invited Plaintiffs, prior to Plaintiffs' filing of this action, to submit a FOIA request directly to the FBI, and that Plaintiffs had chosen not to do so, instead choosing to seek the FBI Records solely from NJIT under OPRA, id. at 8;

and it appearing that, following a series of court conferences, the parties agreed to a process by which the FBI would review the FBI Records on a rolling basis and identify which could be released by NJIT, a process which ultimately resulted in the release of 3,445 pages of responsive records and 379 partially redacted records, id. at 8-9;

3

and it appearing that Plaintiffs now seek attorneys' fees from NJIT totaling $189,359, which is comprised of a lodestar calculation of $134,745, plus a twenty-five percent enhancement, id. at 9;

and it appearing that OPRA provides that "[a] requestor who prevails in any proceeding shall be entitled to a reasonable attorney's fee[,]" N.J.S.A. § 47:1A-6;

and it appearing that Plaintiffs argue they are "prevailing parties" under the catalyst theory outlined by the New Jersey Supreme Court in Mason v. City of Hoboken, 196 N.J. 51, 64 (2008);

and it appearing that the "catalyst theory" provides that a plaintiff is considered a prevailing party, even if an action to enforce OPRA rights is resolved before a court's adjudication of the merits, if the plaintiff can demonstrate: "(1) 'a factual causal nexus between plaintiff's litigation and the relief ultimately achieved'; and (2) 'that the relief ultimate secured by plaintiffs had a basis in law[,]'" Mason, 196 N.J. at 76 (citation omitted);

and it appearing that determination of the causal nexus prong requires the Court to "conduct [a] fact-sensitive inquiry on a case-by-case basis, evaluating the reasonableness of, and motivations for, an agency's decisions, and viewing each matter on its merits[,]" id. at 79;

and it appearing that the burden rests on the litigant seeking fees to show a causal nexus, Mason, 196 N.J. at 76;

and it appearing that Judge Wettre properly found NJIT's conduct reasonable in light of the FBI's repeated demand that NJIT not release records without its approval, NJIT's consistent position to Plaintiffs that it would not do so, and its attempts to facilitate a resolution for Plaintiffs;

and it appearing that Judge Wettre properly found that NJIT's stance both before and after Plaintiffs filed this action – that it would not produce records unless and until authorized by the FBI – never wavered;

and it appearing that Judge Wettre properly rejected Plaintiffs' contention that NJIT should have disregarded the FBI's concerns about the release of confidential and privileged law enforcement records and released them anyway, a contention that is not supported by other persuasive OPRA decisions, see Gannett New Jersey Partners, LP v. County of Middlesex, 379 N.J. Super 205 (App. Div. 2005) (noting that a "custodian may not be in a position to discharge [the] burden [of stating the specific basis for a denial of access] if the asserted confidentiality interest in a document is not that of the government agency upon which the document request was made but rather another government agency");

and it appearing that Judge Wettre properly found that, in the face of the FBI's demand that NJIT not release records to Plaintiffs without the FBI's approval, NJIT acted in a manner encouraged by OPRA, seeking to facilitate a prompt response to Plaintiffs' requests by recommending Plaintiffs serve a FOIA request directly upon the FBI and impleading the FBI as a third-party defendant, see Mason, 196 N.J. at 78 (noting the goal of OPRA is "'both to promote prompt access to government records and to encourage requestors and agencies to work together toward that end by accommodating one another'");

and it appearing that Judge Wettre properly found that while the FBI, a third-party to Plaintiffs' lawsuit against NJIT, ultimately reviewed and released additional records to Plaintiffs, there was no change in conduct by NJIT brought about by the lawsuit, see Spectraserv, Inc. v. Middlesex County Utils. Auth., 416 N.J. Super 565, 583 (App. Div. 2010) (noting a plaintiff must demonstrate that "the complaint brought about change . . . in the custodian's conduct");

and it appearing that the mere production post-lawsuit of documents is not a sufficient basis per se to award fees under the catalyst theory, id.;

5

and it appearing that Judge Wettre properly found that Plaintiffs thus failed to demonstrate a sufficient causal nexus between Plaintiffs' lawsuit <u>against NJIT</u> and the ultimate relief obtained by Plaintiffs <u>from the FBI</u>;

and it appearing that Judge Wettre properly found that Plaintiffs are thus not "prevailing parties" against NJIT entitled to an award of attorneys' fees under OPRA;

**IT IS** on this 2nd day of August, 2018;

**ORDERED** that Judge Wettre's Report and Recommendation dated April 25, 2018, is **ADOPTED**; and it is further

**ORDERED** that Plaintiffs' motion for attorneys' fees is **DENIED**.

*/s Madeline Cox Arleo*
**HON. MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**